UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SOUTHERN BLACK HILLS WATER SYSTEM, INC. | 5:21-CV-05070-VLD |
| Movant, | OPINION AND ORDER |
| vs. | DOCKET NOS. 26 & 31 |
| TOWN OF HERMOSA, | |
| Respondent. | |

## INTRODUCTION

This matter is before the court on plaintiff Southern Black Hills Water System, Inc.'s ("SBHWS") amended complaint alleging defendant, Town of Hermosa ("Hermosa"), violated 7 U.S.C. § 1926(b) & 42 U.S.C. § 1983, under the color of state law. See Docket No. 13. Plaintiff also alleges defendant violated SDCL chapter 9-4, SDCL § 9-21-10, and violated its exclusive easement. Id. Plaintiff seeks declaratory, injunctive, and monetary relief. Id. Jurisdiction is premised on federal question jurisdiction under 28 U.S.C. § 1331 for counts 1-3. Plaintiff asserts this court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), for counts 4-6. Pending are defendant's motion for summary judgment on all counts, and plaintiff's motion for partial summary judgment on counts 1-4 & 6. Docket Nos. 26 & 31. Both parties oppose each other's motions. Docket Nos. 43 & 46.

**FACTS**

The town of Hermosa is a third-class municipality in northern Custer County, South Dakota, straddling Highway 79 to the east and west of the highway.[1]  Docket No. 44, p. 1 ¶ 2.  Hermosa owns and operates a water system.  Docket No. 47, p. 3 ¶ 8.  Lone Coyote Subdivision ("Lone Coyote") is a residential development 1 mile north of Hermosa, located on the west side of Highway 79, occupying land in Custer and Pennington County.[2]  Docket No. 33, p. 1 ¶ 4; Docket No. 47, p. 4 ¶ 14.  Lone Coyote is within the 3-mile radius of the boundaries of Hermosa.  Id. at ¶ 16.  John Preston of The Preston Family, Inc. manages the development of Lone Coyote.  Id. at ¶ 19.  The Preston Family, Inc. has been in discussions about developing a residential subdivision on its land.  Docket No. 47, p. 4 ¶ 18.

SBHWS was founded in 2005 as a 501(c)(12) not-for-profit organization "to operate, maintain, and construct a regional water system" for residents in the southern Black Hills of South Dakota.  Docket No. 30-13, p. 3; Docket No. 47, p. 1 ¶ 1-2; Docket No. 33, p. 1 ¶ 1.  SBHWS received a loan from the United States Department of Agriculture ("USDA") on July 6, 2010.  Docket No. 36-4; Docket No. 44, p. 10 ¶ 32.  An additional USDA loan was obtained July 25, 2013.  Docket No. 36-5.  Real estate located in Custer County and Fall River County was mortgaged to secure both loans.  Docket No. 36-6, p. 5

---

[1] Third Class municipalities in the state of South Dakota are those with populations of 500 or less.  SDCL § 9-2-1.

[2] Lone Coyote is also know as "Preston Land" or "Preston Subdivision."

(SBHWS – 0383).  The USDA also has a security interest in certain personal property as collateral for SBHWS's loan.  Docket No. 37-4.  SBHWS has been continuously indebted to the USDA since the origination of its July 6, 2010, loan.

SBHWS's service area is in dispute.  SBHWS's articles of incorporation do not identify its service area.  Docket No. 30-13.  The 2005, 2011, and 2012 SBHWS maps of the southern Black Hills region are labled "target area" and "phasing" plans of the expansion of their service area.  Docket No. 30-15, p. 1-4 (Ex. 208).  The 2014 SBHWS "Phasing Map" is also labled as, "System Service Areas," and includes portions of Pennington, Custer, and Fall River Counties, the Lone Coyote Subdivision, and Hermosa.  Id. at p. 5.  The 2005, 2011, 2012, and 2014 maps have never been approved by a South Dakota state agency.  See Docket No. 47, p. 2 ¶ 6.

The South Dakota Legislature during its 2010 session passed SDCL § 46A-1-13.11, titled "Southern Black Hills Water System authorized," which became effective March 23, 2010.  The statute authorized SBHWS to construct water systems as described in SBHWS's engineering report in the counties of Custer, Fall River, and Pennington.  SDCL § 46A-1-13.11.

The 2005 "Southern Black Hills Water System Preliminary Engineering Report" referenced in SDCL § 46A-1-13.11 was commissioned by SBHWS and the South Dakota Department of Environmental and Natural Resources.  Docket No. 38-1, p. 21.  At the time the report was created, SBHWS was a conceptual water supply and water delivery system for "all or part of the

3

3-county area of Fall River County, Custer County, and Pennington County."
Id.  The report stated the "Project Area" of SBHWS "is in southwestern South
Dakota within the political/geographical boundaries of Fall River County,
Custer County, and the southern portion of Pennington County."  Id. at p. 28.
Under section 1.3: "Project Area" figure 1.3(A)—"Southern Black Hills Water
System General Location Map"—displays portions of Pennington, Custer, and
Fall River Counties that encompass the Lone Coyote Subdivision and Hermosa.
Id. at Figure 1.3(A).

The 2005 report identified "the community of Hermosa, SD and adjacent
lands to Hermosa" in section 2.3.3: "Specific Issues of Growth Concern."  Id. at
p. 43.  In section 3.3: "Custer County Water Needs Assessment," Hermosa and
Hermosa Water Users were listed in the table.  Id. at p. 82 Table 3.3.1.1(A).
The report noted:

> Of such identified communities, the Hermosa Water Users has
> notified [SBHWS] they would not be interested in receiving any
> water from [SBHWS].  Per this request of Hermosa Water Users, no
> analysis of their current or long-term water needs relative to being
> provided for by [SBHWS] is reviewed by this report.

Id. at p. 82.  Section 3.3.2.1: "Identification of Rural Users" defines rural users
as "rural farms and ranches, with their associated livestock use, and other rural
residences inclusive of those non-farm homes both within subdivisions or not
contained in subdivisions."  Id. at p. 86.  "Hermosa Service Area . . . that rural
area located generally near and about Hermosa, SD" is identified as a "service
area."  Id. at p. 87.

Hermosa knew that SBHWS served or had the ability to serve the Paramount Point and Spring Creek developments near Lone Coyote.  Docket No. 44, p. 3 ¶ 10.  Paramount Point abuts Hermosa municipal limits on the northwest corner of the city limits on the west side of Highway 79, but Paramount Point was never annexed, nor does Hermosa provide water to any Paramount Point residents.  Id. at p. 4 ¶ 10.  Spring Creek, served by SBHWS, is located northeast of Hermosa on the east side of Highway 79.  Docket No. 39-1, p. 1 (Preliminary Engineering Report for Rural Water System Improvements Paramount Point to Spring Creek Acres).  SBHWS was planning a waterline between Paramount Point and Spring Creek that would run directly by Lone Coyote.  Id.

SBHWS commissioned "A Water System Evaluation" to address SBHWS's ability to physically serve Lone Coyote.  See Docket No. 35-7 (Ex. 59).  The engineering report concluded that SBHWS had the water supply to meet Lone Coyote's demands.  Id. at p. 24; Docket No. 44, p. 13 ¶ 40.  It further concluded that SBHWS could provide water to Lone Coyote within a reasonable time.  Docket No. 35-7 (Ex. 59); Docket No. 44, p. 12 ¶ 37.

In 2018, the Prestons requested additional information about obtaining SBHWS water for Lone Coyote.  Docket No. 44, p. 3 ¶ 7.  In 2020, John Preston recalled attending a SBHWS informational meeting.  Docket No. 30-7, p. 37 ln. 5-6; Docket No. 34-1 pp. 1-2.  Mr. Preston was considering receiving water from SBHWS.  Id. at p. 38 ln. 14-17.  Lone Coyote provided a copy of its preliminary plat to SBHWS.  Docket No. 44, p. 3 at ¶ 9.  There was no formal

5

agreement between SBHWS and The Preston Family Inc. for SBHWS to service Lone Coyote.  Docket No. 30-7, p. 37 ln. 23 – p. 38 ln. 20.

In February 2020, Hermosa knew that SBHWS was in the process of purchasing a well or wells within 3 miles of Hermosa.  Docket No. 30-10.  Hermosa attorney Mitchell Johnson wrote a letter to SBHWS calling its attention to SDCL § 9-47-22, which requires notice to a municipality before a rural water carrier supplies water within three miles of a municipality.

In response, SBHWS's attorney, Talbot Wieczorek, acknowledged SDCL § 9-47-22, but stated "at this time, no final plans are in place" to service additional customers outside Hermosa.  Docket No. 30-11, p. 2.  Mr. Wieczorek went on to say that if the project moved forward and "if there is someone that falls within the jurisdictional area described by that statute, [SBHWS] will plan on providing notice to Hermosa."  Id.  SBHWS never submitted a request to Hermosa consistent with SDCL § 9-47-22.  Docket No. 29, p. 2 ¶ 7 (Holsworth Aff.).

In November 2020, Mr. Preston sent the city of Hermosa a "letter of intent," at the city's request, in which he acknowledged Lone Coyote was seeking city water and sewer services from Hermosa and, in return, Lone Coyote would agree to be annexed by Hermosa.  Docket No. 44, p. 6 ¶¶ 16-17; Docket No. 30-1 (Ex. 9).

On March 3, 2021, in a letter addressing "regionalization issues," the Hermosa Board of Directors contacted SBHWS to present proposals for purchasing SBHWS water and requesting SBHWS to invest in infrastructure to

Lone Coyote.  Docket No. 34-4 (Ex. 5).  Hermosa disputes that the letter represents that the Board of Trustees agreed that SBHWS had the physical ability to serve Lone Coyote.  Docket No. 44, p. 10 ¶ 33.

On June 14, 2021, SBHWS purchased a "Water Utility Easement" from Heartland Storage, LLC ("Heartland").  Docket No. 35-9 (Ex. 87).  The purpose was for "the exclusive perpetual right and easement on land owned by [Heartland] with the right to construct, operate, maintain, repair, [and] install parallel lines to and renew a waterline and values."  Id. at p. 1.  The parties agreed not to build, create, construct, or permit to be built, created, or constructed any obstruction, building, or other structure upon, over, or under the easement including within a 5-foot strip adjacent to the northern edge.  Id. In consideration for the easement, SBHWS paid Heartland $35,000 and offered Heartland four water connections.  Id. at p. 2.

On June 15, 2021, Hermosa voted to provide Lone Coyote with water and sewer.  Docket No. 44, p. 8 ¶ 25.  On July 8, 2021, the Hermosa Board of Trustees voted to send a letter to SBHWS regarding Hermosa's intent to serve Lone Coyote.  Docket No. 47, p. 5 ¶ 22.

On July 12, 2021, Hermosa's attorney sent a letter to SBHWS stating that the Prestons would soon be submitting a petition for annexation to Hermosa and were requesting Hermosa provide water services.  Docket No. 30-12.  The letter also requested that SBHWS provide Hermosa with records showing the location of SBHWS's service area and whether SBHWS had the ability to serve Lone Coyote.  Id.

7

SBHWS's attorney responded on July 23, 2021, stating he believed that Lone Coyote was part of the SBHWS service territory.  Docket No. 30-5; Docket No 47, p. 5 ¶ 19.  The letter stated that SBHWS's service area was established by state law in 2010 under SDCL § 46A-1-13.11, and Lone Coyote could be served from the Paramount Point area with development of infrastructure in the area.  Docket No. 30-5, p. 2.

On October 15, 2021, SBHWS filed a complaint against Hermosa alleging violation of 7 U.S.C. § 1926(b) & 42 U.S.C. § 1983 in this court. Docket No. 1.  On November 23, 2021, Hermosa annexed Lone Coyote with the intention to provide water service to Lone Coyote.  Docket No. 47, p. 6 ¶ 26; Docket No. 44, p. 7 ¶ 19.  Hermosa also voted to annex a 40ft strip of utility lots situated between Hermosa and the Lone Coyote subdivision.  Docket No. 35-1; Docket No. 37-3.

On December 8, 2021, Hermosa and Lone Coyote signed a developer agreement to split the cost of bringing water and sewer lines from Hermosa to Lone Coyote.  Docket No. 44, p. 7 ¶ 18.  In February of 2022, Hermosa obtained an easement to run its water lines and sewer line on Heartland's property.  Docket No. 44, p. 20  ¶ 57.  Hermosa constructed water and sewer lines on the easement that cross over and under SBHWS's easement and watermain.  Id. at ¶ 58; Docket No. 36-2, p. 6.  Hermosa knew of SBHWS's easement at the time it aquired its easement from Heartland.  Id. at ¶ 59.

After the annexation, SBHWS filed an amended complaint alleging six claims for relief:  (1) Hermosa violated 7 U.S.C. § 1926(b), entitling SBHWS to

money damages; (2) Hermosa violated § 1926(b), entitling SBHWS to declaratory relief; (3) Hermosa violated § 1926(b), entitling SBHWS to injunctive relief; (4) Hermosa's annexation of Lone Coyote was unlawful under South Dakota law; (5) the bid awarded by Hermosa to construct the water system violated South Dakota law; and (6) Hermosa's purchase of an easement which interfered with SBHWS's easement constitutes a taking under the South Dakota Constitution for which damages must be paid or the encroachment must be enjoined.  Docket No. 13.

SBHWS now moves for partial summary judgment on counts 1-4 and 6. Docket No. 31.  Hermosa moves for summary judgment in its favor on all six claims.  Docket No. 26.

## DISCUSSION

### A.      Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

Generally, the court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED.

R. CIV. P. 56(a).  Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must present facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986); FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.  Anderson, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93-95 (3d ed. 1983)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247-48.

The mere fact that both parties have filed cross-motions for summary judgment (on counts 1-4 & 6) does not necessarily mean that no genuine dispute of a material fact exists; nor do cross-motions constitute a stipulation to the court's disposition of the case by motion.  Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983); Barnes v. Fleet Nat'l. Bank, 370 F.3d 164, 170 (1st. Cir. 2004).  Rather, cross-motions require the court to evaluate

10

each motion independently and determine whether that movant is entitled to judgment as a matter of law.  C. Line, Inc. v. City of Davenport, 957 F. Supp. 2d 1012, 1024-25 (S.D. Iowa 2013); St. Luke's Methodist Hosp. v. Thompson, 182 F. Supp. 2d 765, 769 (N.D. Iowa 2001).

**B.    Counts 1-3: 7 U.S.C. § 1926(b) and 42 U.S.C. § 1983**

    **1.    7 U.S.C. § 1926(b)**

        **a.    The Tripartite Eighth Circuit Test under § 1926(b)**

Congress enacted 7 U.S.C. § 1926 as part of the Agricultural Act of 1961 to provide loans to rural water associations, including corporations not operated for profit such as SBHWS.  7 U.S.C. § 1926(a)(1).  The Agricultural Act authorized Water Facilities Act loans to farmers, ranchers, farm tenants, and other rural residents in rural communities, whereas previously such loans were limited to farmers only.  S. REP. No. 566, p. 67. Sec. 306 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2243, 2309.  Congress reasoned that "[b]y including service to other rural residents, the cost per user is reduced and the loans are more secure."  Id.  Rural and rural areas are defined as "any area not in a city or town with a population in excess of 10,000 inhabitants."  7 C.F.R. § 1780.3 (2022).  Hermosa is classified as rural because of its population of 382, reported in the 2020 census.  United States Census Bureau, *Hermosa, South Dakota*, https://data.census.gov/all?q=Hermosa +town,+South+Dakota (last visited July 25, 2023).

To further secure these federal loans, a new section was added.  Id. What eventually became 7 U.S.C. § 1926(b), was included to "[protect] the

territory served by such an association facility against competitive facilities, which might otherwise by developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system." <u>Id.</u> Federal regulations echo this purpose.

> 7 U.S.C. 1926(b) was enacted to protect the service area of Agency borrowers with outstanding loans . . . from loss of users due to actions or activities of other entities in the service area of the Agency financed system.  Without this protection, other entities could extend service to users within the service area, and thereby undermine the purpose of the congressionally mandated water and waste loan and grant programs and jeopardize the borrower's ability to repay its Agency debt.

7 C.F.R. § 1782.14 (2023).  Section 1926(b) states in full:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b).

The Eighth Circuit has stated "the primary purposes of § 1926(b) are to promote water development and safeguard the economic security of USDA-indebted water districts." <u>Pub. Water Supply Dist. No. 1 of Greene Cty. v. City of Springfield, Missouri</u>, 52 F.4th 372, 374 (8th Cir. 2022) (citing <u>Rural Water Sys. No. 1 v. City of Sioux Ctr.</u>, 202 F.3d 1035, 1039 (8th Cir. 2000)).

This court must apply the established Eighth Circuit test as to whether § 1926(b) entitles SBHWS to protection.  "To qualify for protection, an entity

must: (1) be an 'association' under the statute, (2) have a qualifying federal loan, and (3) have provided or made service available to the disputed area." Pub. Water Supply Dist. No. 3 of Laclede Cty. v. City of Lebanon, 605 F.3d 511, 521 (8th Cir. 2010) (citing Sequoyah Cty. Rural Water Dist. No. 7 v. Town of Muldrow, 191 F.3d 1192, 1197 (10th Cir. 1999)).

Neither "service provided or made available" nor the "area served" by the water association are defined in the federal statute. B-Y Water Dist. v. City of Yankton, No. CIV. 07-4142, 2008 WL 5188840, at *1 (D.S.D. Dec. 10, 2008). Federal regulations define "service area" broadly in the context of USDA Water and Waste Disposal loans as, "[t]he area reasonably expected to be served by the project being financed by the guaranteed loan." 7 C.F.R. § 1780.3 (2022).

The Eighth Circuit has held an association has "made service available" according to § 1926(b) if it has (1) the physical ability to serve an area; and (2) the legal right to serve an area." City of Sioux Ctr., 202 F.3d at 1037. The physical ability to serve an area is determined by the "pipes in the ground" test. City of Lebanon, 605 F.3d at 521. "Under the pipes in the ground test used in water service cases, courts examine whether a water association has adequate facilities within or adjacent to the area to provide service to the area within a reasonable amount of time after a request for service is made." Id. (quoting Sequoyah Cty., 191 F.3d at 1202).

Parties agree that SBHWS is a "water association" under § 1926(b) (Docket No. 27, p. 10; Docket No. 44, p. 9 ¶ 31),[3] that SBHWS has been indebted to the USDA since 2010 (id.; Docket No. 36-7), and that SBHWS has the physical ability to serve Lone Coyote (Docket No. 43, p. 14).  Resolving summary judgment for counts 1-3, therefore, rests on the whether SBHWS has the legal right to serve Lone Coyote.

### b.  Legal Right Under State Law

Legal right is a matter of state law.  See City of Sioux Ctr., 202 F.3d at 1037; Le-Ax Water Dist. v. City of Athens, 346 F.3d 701, 706 (6th Cir. 2003) (quoting Lexington—S. Elkhorn Water Dist. v. City of Wilmore, 93 F.3d 230, 233 (6th Cir. 1996) (where plaintiff "has not established its authorization to serve the disputed properties it cannot be said to have made service available.").

Hermosa argues that SBHWS does not have the legal right to serve Lone Coyote because it does not have any state-approved territorial map; thus it is subject to the 3-mile territorial restrictions of SDCL § 9-47-22 which were in place prior to SBHWS obtaining its USDA loan.[4]  Section 9-47-22 provides as follows:

---

[3] Hermosa argues that SBHWS's classification as a not-for-profit 501(c)(12) and not as a Water User District means it has no state-approved territorial map and thus SDCL § 9-47-22 applies.  Hermosa does not argue that SBHWS's classification as a 501(c)(12) effects its § 1926(b) "association" status.  Docket No. 27, p. 13; see § 1926(a)(1).

[4] Section 9-47-22 was enacted in 1989.

> If a rural water system is requested after July 1, 1989, to provide water service to any person who resides within three miles of a municipality owning and operating a water supply system, the rural water system shall promptly notify such municipality of such request in writing. Within sixty days from the receipt of such notice, the municipality may elect to provide water service to such person. If the municipality does not so elect, the rural water system may provide such service.

SDCL § 9-47-22.

SBHWS counters that its legal right to serve Lone Coyote was established by the 2010 South Dakota Legislature through the enactment of SDCL § 46A-1-13.11.[5]   Section 46A-1-13.11 provides as follows:

> Pursuant to §§ 46A-1-11 to 46A-1-13, inclusive, construction of a seventy-seven million eight hundred thousand dollar Southern Black Hills Water System as generally described in the report "Southern Black Hills Water System Preliminary Engineering Report", dated February, 2005, is hereby authorized for the purposes of providing safe and adequate municipal, rural, and industrial water supplies in the counties of Custer, Fall River, and Pennington.

SDCL § 46A-1-13.11.

South Dakota law requires a "water user district" to include in its petition for organization to the Department of Agriculture and Natural Resources, "a description of the lands constituting the proposed district and of the boundaries of the proposed district, and the names of any municipalities included partly or wholly within the boundaries of the proposed district." SDCL § 46A-9-4(3).  Both parties agree that SBHWS is not a "water user

_____

[5] Section 46A-1-13.11 was effective as of March 23, 2010.

15

district," but rather it is a 501(c)(12)[6] "regional water system," and is not

subject to SDCL § 46A-9-4(3).  See Docket No. 30-13 (SBHWS Articles of

Incorporation).  Hermosa contends that SDCL § 9-47-22 limits SBHWS's

service territory to those areas outside a 3-mile radius around Hermosa.  If

SDCL § 9-47-22 is not preempted by § 1926(b), the 3-mile restriction around

Hermosa would exclude SBHWS from servicing Lone Coyote.

In a previous case in this district, Sioux Rural Water System, Inc., v. City

of Watertown, Sioux Rural Water System ("Sioux"), incorporated as a 501(c)(3),

sued the municipality of Watertown for protection under § 1926(b).  No. CV 15-

1023-CBK, 2017 WL 1372602, at *2 (D.S.D. Apr. 12, 2017).  Both parties

moved for summary judgment.  Id.  The court held that the requirement of

SDCL § 46A-9-4(3) that territory be disclosed did not apply, and that instead

Sioux was subject to the South Dakota Nonprofit Corporation Act, SDCL

Chapter 47-22 and 26 U.S.C. § 501(c)(3).  Id. at *3.  At issue was whether

SDCL § 9-47-22 restricted Sioux from servicing territory within 3 miles of

Watertown.  Id. at *1.

The court held that if SDCL § 9-47-23 were applied, it would permit

Watertown to continuously annex territory and expand its 3-mile restrictive

zone without restriction, eating away at Sioux's service territory, the loan for

which was guaranteed by the federal government.  Id. at *4.  This curtailing of

---

[6] Organizations qualify for tax-exempt status under IRS Section 501(c)(12) "if 85 percent or more of the organization's income consists of amounts collected from members for the sole purpose of meeting losses and expenses."  IRS.gov, *Other Tax-Exempt Organizations,* https://www.irs.gov/charities-non-profits/other-tax-exempt-organizations (last visited July 7, 2023).

Sioux's territory under South Dakota law, "would permit Watertown (and others) to take property rights as to which the United States has rights as a secured party.  This is something that runs afoul of federal supremacy." Id. at *3.

The court applied the Eighth Circuit test to determine whether Sioux could receive protection under § 1926(b).  In deciding whether Sioux had the legal right to serve the disputed territory, the court relied on Sioux's boundaries established in its articles of incorporation.  Id.  Sioux described its service area as all of Codington (where Watertown is situated), Deuel, and Hamlin Counties.  Id.  The court determined that the territory set by Sioux's state-approved articles of incorporation gave Sioux the legal right to serve within the 3-mile boundaries established by SDCL § 9-47-22.  Id. at *4. Genuine issues of material fact remained to determine whether Sioux had the physical ability to serve and was not decided on summary judgment.  Id.

In another case, B-Y Water Dist. v. City of Yankton, B-Y Water Dist. ("B-Y") was incorporated as a water district and was subject to SDCL § 46A-9-4(3). No. CIV. 07-4142, 2008 WL 5188840, at *2.  B-Y sued the municipality of Yankton for violating § 1926(b).  Id. at *1.  B-Y's formation petition to the Department of Natural Resources and Development described its service area as the whole of Yankton County, South Dakota, outside the boundaries of the City of Yankton; all of Bon Homme County, South Dakota; and portions of Turner County, South Dakota.  Id. at *2.

Yankton's argument that SDCL § 9-47-22 prevented B-Y from servicing customers within 3 miles of Yankton failed.  Id.  The court held that B-Y's geographical boundaries were authorized under SDCL § 46A-9-4(3).  Id.  Those boundaries included the disputed area within 3 miles of Yankton.  Id.  The court held that the effect of § 1926(b) was to put limitations on a municipality's encroachment of a protected water association.  Id. at *4.  "[I]f state law is used to justify a municipality's encroachment upon an area in which an indebted water association is legally providing service, the state law 'would clearly conflict with or stand as an obstacle to, the non-encroachment provisions of § 1926(b), and consequently would be preempted by superior federal law in the form of § 1926(b).' " Id. (quoting Rural Water Sys. No. 1 v. City of Sioux Ctr., Iowa, 967 F. Supp. 1483, 1528–29 (N.D. Iowa 1997)).  The court determined that B-Y had the legal right to serve the disputed area to qualify in part for § 1926(b) protection.  However, the court denied B-Y's motion for summary judgment because factual questions remained whether B-Y had the physical ability to serve the area.  Id. at *3.

Hermosa asks this court to consider a recent Iowa case, which is not binding on this court.  See Xenia Rural Water Dist. v. City of Johnston, Iowa, 467 F. Supp. 3d 696, 706 (S.D. Iowa 2020).  The Xenia court relied heavily on whether a water association had a legal right to serve disputed territory under Iowa's state statutes.  Xenia, 467 F. Supp 3d at 704.

Iowa law restricts rural water districts from providing services within 2 miles of the limits of a city as of April 1, 1987, unless an exception is

18

authorized.  Iowa Code Ann. § 357A.2.  The rule only applies to rural water districts incorporated under Chapter 357A of the Iowa Code.  Id.  In Xenia, the rural water district was originally incorporated as a nonprofit under Chapter 504A of the Iowa Code.  Id. at 707.  Xenia later reorganized as a water district "with all the rights, powers and duties specified in Chapter 357A."  Id. at 706.

The court held that the 2-mile rule applied to Xenia only after it had (1) reformed as a water district and (2) had qualifying USDA loans, "because § 1926(b) necessarily looks to state law to prospectively define a rural water provider's service area at the time the provider assumes a qualifying loan."  Id. at 707.  Because Xenia became indebted to the federal government only *after* the Iowa 2-mile rule was enacted, the court held the 2-mile buffer around a municipality was not part of Xenia's territory.  Id.

SBHWS asserts that Xenia is not helpful because the state statutory structure and text of the territory limiting statutes of Iowa are completely different than those in South Dakota.  Docket No. 46, pp. 7-10.  SBHWS is correct that the statutes are not identical, however the statutes are more alike than different.  Section 357A.2 is a *prohibition* on rural water districts providing water within 2 miles of a municipality unless an exception is met.  Iowa Code § 357A.2.  Section 357A.2.(4) gives rural water an opportunity to petition the city to serve water within 2 miles.  Only if the city (1) fails to respond to the petition within seventy-five days, (2) waives its right to serve, or (3) fails to provide service within three years of the petition, does the rural water district gain the legal right to serve within 2-miles of the municipality.  Id.

South Dakota's territory limiting statute, SDCL § 9-47-22, requires a rural water system to provide *notice* to the town or city if planning to serve a territory within 3 miles of the muncipality.  SDCL § 9-47-22.  Prohibition verses notice might be significant if it were not for the priority status § 9-47-22 affords municipalities as in § 357A.2.  Like an Iowa municipality, a South Dakota municipality has the right of first refusal to serve a territory within a certain mile radius.  Only if the municipality elects not to serve, then may a rural water system provide service.  Id. (Section 9-47-22 provides South Dakota municipalities with a 3-mile radius; § 357A.2 provides Iowa municipalities with a 2-mile radius).  South Dakota's notice requirement functions like the petition requirement in Iowa.  Even though § 9-47-22 does not state that a rural water system is "prohibited" from serving within a 3-mile radius of a municipality, the operative language, "if the municipality does not so elect" is prohibitive.

The result of these statutes is the same, a rural water system or district is required to seek permission from a municipality prior to serving an area within the statutory radius.  The statutes in both states were enacted within two years of each other.  It is not surprising that two similarly situated rural states would pass similar restrictions on rural water systems.  Variations in statutory structure do not nullify the Xenia court's discussion on the interplay between state territorial restrictions and § 1926(b).  But this court parts ways with the Xenia court, as discussed in more detail below.

### i.      SBHWS's Service Area

SBHWS claims that its service area is the whole of Custer, Fall River, and Pennington Counties, including Lone Coyote.  Docket No. 32, pp. 12-13; Docket No. 30-5 (Ex. 31).  This case differs from those similarly situated cases previously considered before this district court.  In B-Y and Sioux, the courts relied on the territorial descriptions of the water associations' service area found in the water district formation documents and nonprofit articles of incorporation, respectively.  SBHWS was incorporated as a nonprofit and was not required to submit territorial descriptions to the state of South Dakota. SBHWS's nonprofit articles of incorporation lack any territorial description. See Docket No. 30-13.  While the name may be informative, "Southern Black Hills Water System, Inc." the name alone is not sufficient to describe where SBHWS has the legal right to serve.  SBHWS's 2005, 2011, 2012, and 2014 target/phasing maps are also insufficient to describe SBHWS's service area because they were never approved by the state.  The court looks to state law to see if SBHWS's service area is defined there.

### ii.      Legal Right under South Dakota Law

Statutory construction is a question of law.  In re Certification of a Question of L. from United States Dist. Ct., Dist. of S. Dakota, S. Div., 779 N.W.2d 158, 162 (S.D. 2010) (citing Wiersma v. Maple Leaf Farms, 543 N.W.2d 787, 789 (S.D. 1996)).  "We interpret statutes in accord with legislative intent. Such intent is derived from the plain, ordinary and popular meaning of statutory language."  Unruh v. Davison County, 744 N.W.2d 839, 842 (S.D.

2008) (citation omitted).  "When a statute's language is clear, certain and unambiguous, our function confines us to declare its meaning as plainly expressed." Wiersma, 543 N.W.2d at 790.

A court must consider the statute as a whole, as well as other enactments relating to the same subject.  Simpson v. Tobin, 367 N.W.2d 757, 763 (S.D. 1985).  The court is to give reasonable construction to conflicting statutes, and to give effect, if possible, to all provisions under consideration. Karlen v. Janklow, 339 N.W.2d 322, 323 (S.D. 1983).  "However, terms of a statute *relating to a particular subject will prevail over general terms of another statute.*" Clem v. City of Yankton, 83 S.D. 386, 402, 160 N.W.2d 125, 134 (S.D. 1968) (emphasis added).  A court must assume that the legislature, in enacting a provision, had in mind previously enacted statutes relating to the same subject.  Meyerink v. Nw. Pub. Serv. Co., 391 N.W.2d 180, 183–84 (S.D. 1986); State v. Feiok, 364 N.W.2d 536, 539 (S.D. 1985).

SBHWS relies exclusively on SDCL § 46A-1-13.11 for its legal right to serve Lone Coyote.  SBHWS claims that the maps and territorial descriptions contained within the 2005 Engineering Report were incorporated into the statute rendering those maps definitive of its legal service area.

Hermosa contends that the maps were not "incorporated" under the plain language of the statute.  Section 46A-1-13.11 does not "incorporate" specifically the 2005 Engineering Report maps and territorial descriptions. Instead, SDCL § 46A-1-13.11 states: "[C]onstruction of a seventy-seven million eight hundred thousand dollar Southern Black Hills Water System as *generally*

22

*described* in the report "Southern Black Hills Water System Preliminary Engineering Report," dated February, 2005." (emphasis added).  This court agrees with Hermosa that when the South Dakota Legislature used "generally described" to reference the 2005 report, it did not intend to incorporate by reference the whole report and contents within as law defining SBHWS's territory.  SBHWS does not however, have to rely on incorporation.

A statute enacted by the legislature authorizing construction of a water facility in a particular territory is equally valid to establish a legal right by formation.  E.g. B-Y, No. CIV. 07-4142, 2008 WL 5188840, at *2; Sioux, No. CV 15-1023-CBK, 2017 WL 1372602, at *2.  The South Dakota Legislature expressly gave SBHWS a legal right to serve a specific territory.  As in Unruh, legislative intent is derived from the plain, ordinary, and popular meaning of the statute.

The title of SDCL § 46A-1-13.11 is: "Southern Black Hills Water System *authorized*."  The pivotal language: "construction . . . is hereby *authorized* for the purposes of providing safe and adequate municipal, rural, and industrial water supplies in the counties of Custer, Fall River, and Pennington."  SDCL § 46A-1-13.11 (emphasis added).  The South Dakota Legislature plainly expressed its intent to authorize SBHWS to serve the whole of Custer, Fall River, and Pennington Counties.  Lone Coyote is situated in Custer and Pennington Counties.

Hermosa asks this court to narrowly interpret § 46A-1-13.11 as simply an appropriations enactment and to reject the interpretation that it established

23

SBHWS's legal right to serve the counties mentioned.  But § 46A-1-13.11 is part of a larger whole consisting of §§ 46A-1-11 to 46A-1-13, inclusive.  As Meyerink informs, statutes do not live in a void within the code.  Section 46A-1-11 instructs the Board of Water and Natural Resources to prepare preliminary cost estimates and adopt a resolution requesting the state legislature authorize construction of a water facility.  Section 46-1-12 instructs the same board to evaluate and allocate all water facilities in included in the State Water Resources Management System for appropriation purposes.  Section 46-1-13 instructs the board to present cost data to the Governor and Legislature to authorize cost-sharing of water facility construction.

This court must assume that the South Dakota Legislature had SDCL § 9-47-22 in mind when it authorized SBHWS to construct a water system within 3 miles of Hermosa.  This is evidenced by the precise language used.  SBHWS was authorized to provide "*municipal*, rural, and industrial water supplies" anywhere in the three identified counties.  See 7 C.F.R. § 1780.3 (2022) (emphasis added) (rural is defined has any area, including towns, under 10,000 in population, which includes Hermosa).  The Legislature was presented with the 2005 Engineering Report that contained various "service area" maps that included the rural areas within the 3-mile radius of Hermosa.  The Legislature authorized construction of water facilities in Custer, Fall River, and Pennington Counties despite SDCL § 9-47-22.

Under Clem, if statutes contradict each other, statutes relating to a particular subject will control over statutes with general terms.  This is

24

precisely the case here.  <u>Clem</u>, 160 N.W.2d at 134.  Section 46A-1-13.11 was passed to specifically authorize SBHWS to construct water facilities in a specific location—within the three named counties of South Dakota.  Section 46A-1-13.11 contained a funding mechanism for the project.  The project was reviewed by the Board of Water and Natural Resources and the State Water Resources Management System.  Costs were presented to the Governor and Legislature prior to passage.

Section 9-47-22, by contrast, applies to any number of rural water systems and municipalities in the state.  It is a general notice requirement for rural water systems to inform a municipality if they intend to service "any person" within a 3-mile radius of that municipality.  After such notice, "[i]f the municipality does not so elect, the rural water system may provide such service."  SDCL § 9-47-22.  The specificity of SDCL § 46A-1-13.11 controls.

Hermosa also argues that SDCL § 9-47-22 has been on the books since 1989, well before the 2005 formation of SBHWS, and the 2010 passage of SDCL § 46A-1-13.11.  Docket No. 26, p. 17.  Therefore, this court should find that SDCL § 9-47-22 controls, "because § 1926(b) necessarily looks to state law to prospectively define a rural water provider's service area at the time the provider assumes a qualifying loan."  <u>Xenia</u>, 467 F. Supp. 3d at 707.

Hermosa correctly identifies timing as a relevant issue to the statutory scheme.  But timing is not in Hermosa's favor.  Unlike in <u>Xenia</u>, there was an act of the South Dakota Legislature 21 years after the enactment of § 9-47-22 that expressly gave SBHWS the legal right to serve Lone Coyote.  Section 46A-

1-13.11 was effective March 23, 2010, four months prior to SBHWS becoming indebted to the USDA in July of 2010.  Unlike SBHWS, Xenia had no state authority giving it a legal right to serve within Iowa's 2-mile radius.  Through the passage of § 46A-1-13.11, SBHWS established legal right to serve Lone Coyote prior to its indebtedness, an essential requirement of § 1926(b) protection, and consistent with the <u>Xenia</u> court's analysis.

Under the statutory analysis instructed by the South Dakota Supreme Court, the South Dakota State Legislature gave SBHWS the legal right to serve Lone Coyote as of March 23, 2010.  Furthermore, under the Eighth Circuit caselaw, any "[d]oubts about whether a water association is entitled to protection from competition under § 1926(b) should be resolved in favor of the FmHA-indebted party seeking protection for its territory."  <u>City of Sioux Ctr.</u>, 202 F.3d at 1038.  The court concludes that state law gives SBHWS the legal right to serve Lone Coyote.

### c.      Relative Cost

Hermosa does not challenge SBHWS's assertion that it meets the pipes in the ground test, "insofar as SBHWS claims to have proximate and adequate capacity with which it can serve Lone Coyote."  Docket No. 43, p. 14.  SBHWS's expert Theodore F. Schultz concluded that SBHWS has sufficient water capacity to serve not only Lone Coyote, but other users along Highway 79. Docket No. 35-7, p. 17.  System improvements are planned to run water lines between Paramount Point and Spring Creek Acres proximate to Lone Coyote. <u>See</u> Docket No. 39-1.  Schultz concluded that SBHWS's expansion plan would

provide the necessary water volume, pressure, and capacity to serve Lone Coyote within a reasonable amount of time.  Docket No. 35-7, p. 18.

Hermosa asks this court to expand the pipes in the ground test to consider the comparative cost of SBHWS and Hermosa's water services.  Id.; Rural Water Dist. No. 1 v. City of Wilson, 243 F.3d 1263, 1270 (10th Cir. 2001).  SBHWS disputes Hermosa's analysis of the cost of each of their respective offers to bring water to Lone Coyote.  Docket No. 46, p. 2.

This court declines to embark on a market analysis of what may or may not be considered a "reasonable" cost of water service—with good reason.  The Tenth Circuit's additional consideration of market rate is an attenuated analysis of § 1926(b).  To justify the additional test, the Tenth Circuit states that "service . . . made available does not exclude consideration of costs" giving the court *carte blanche* to include it.  Id. at 1271.  The Tenth Circuit relied on an Eastern District of Virginia case from 1958 to define "service made available."  Id.  That case held (unrelated to a § 1926(b) claim) that availability of water was premised on reasonable cost.  Metz v. Tusico, Inc., 167 F. Supp. 393, 397 (E.D.Va. 1958).  The court finds Metz to be inapposite to an analysis of § 1926(b) and declines to follow it in this context.

SBHWS has established that they have a legal right to serve Lone Coyote. Hermosa concedes that SBHWS has the physical ability to serve Lone Coyote under Eighth Circuit precedent.  Because Hermosa took steps to curtail SBHWS's service area by annexing Lone Coyote for the purpose of providing

27

sewer and water services, this court grants SBHWS summary judgment in its favor as to liability on counts 1-3.

### 2.    Preemption

As an alternative to the court's holding above that SBHWS has the legal right to serve Lone Coyote under state law, the court examines preemption. The Laws of the United States shall be the supreme law of the Land.  U.S. CONST. art. VI, cl. 2.  Courts must not give effect to state laws that conflict with federal laws.  Armstrong v. Exceptional Child Ctr., Inc., 575 U.S. 320, 324 (2015) (citing Gibbons v. Ogden, 9 Wheat. 1, 210 (1824)).  "[The Supremacy Clause] instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so."  Id. at 325.

There are three types of preemption: "conflict," "express," and "field." Murphy v. Nat'l Collegiate Athletic Ass'n, 138 S. Ct. 1461, 1480 (2018).  At issue here is conflict preemption.  Regardless of the type: if Congress enacts a law that imposes restrictions or confers rights on private actors and if a state law confers rights or imposes restrictions that conflict with the federal law, the federal law takes precedence, and the state law is preempted.  See English v. General Elec. Co., 496 U.S. 72, 78–79 (1990).  Conflicts of state law that prevent or frustrate the accomplishment of a federal objective and conflicts of state law that make it impossible for private parties to comply with both state and federal law warrant preemption.  Geier v. Am. Honda Motor Co., 529 U.S.

861, 873 (2000) (citing <u>Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta,</u> 458 U.S. 141, 153 (1982)).

The Eighth Circuit has not directly addressed various lower court decisions as to whether § 1926(b) preempts state law.  <u>Greene Cty.,</u> 52 F.4th at 377 (the court addressed the narrow issue of the statue of limitations under 42 U.S.C. § 1983); <u>Lebanon,</u> 605 F.3d at 511, 516, 519 (protection under § 1926(b) depends on meeting the qualifications of the plain language in the statute); <u>Sioux Ctr.,</u> 202 F.3d at 1038 (any "[d]oubts about whether a water association is entitled to protection from competition under § 1926(b) should be resolved in favor of the FmHA-indebted party seeking protection for its territory.").

SBHWS claims that § 1926(b) preempts SDCL § 9-47-22 because the two conflict; § 9-47-22 frustrates the purpose of the protections that § 1926(b) affords rural water associations, protections that ensure SBHWS's expansion and ability to repay its federal loans.  Docket No. 32, p. 14.  Hermosa's position is that SDCL § 9-47-22 is not preempted by § 1926(b) because there is no conflict in the text of the statutes.  Docket No. 43, p. 9.  Hermosa leans on <u>Xenia</u> for this proposition—it argues that because § 1926(b) fails to define "made service available," the territorial limitations of SDCL § 9-47-22 fill the gap.  <u>Id.</u>  The <u>Xenia</u> court held that because § 1926(b) does not define service area, there is no preemption, and state law defines service area.  <u>Xenia,</u> 467 F. Supp 3d at 707.

The <u>Xenia</u> court relied on the timing of enactment of the Iowa 2-mile rule and the timing of Xenia's qualifying loan to limit Xenia's service area under state law.  <u>Id.</u> at 709.  However, the 2-mile rule only applied to Xenia once it (1) became a water district subject to the restriction, and (2) had qualifying loans.  <u>Id.</u>  "Any expansion of Xenia's protected service area from loans taken out in 1992 or later is defined by the 2-mile rule, but § 1926(b) does not preempt the 2-mile rule in such situations because § 1926(b) necessarily looks to state law to prospectively define a rural water provider's service area at the time the provider assumes a qualifying loan."  <u>Xenia</u>, 467 F.Supp. 3d at 709.  Xenia filed a motion for reconsideration to the United States District Court for the Southern District of Iowa, which was denied.  In doing so, the district court certified three questions to the Iowa Supreme Court.  <u>Xenia Rural Water Dist. v. City of Johnston</u>, 959 N.W.2d 113 (Iowa 2021), reh'g denied (May 24, 2021).  The Iowa Supreme Court agreed with the district court's conclusion that Xenia was subject to the 2-mile rule.  <u>Id.</u> at 125.  Outside Iowa Code 357A.2, no other state authority, agency, or statute, provides an alternative legal right to <u>Xenia</u> to serve within 2 miles of a municipality.  <u>Id.</u> at 126; <u>see</u> <u>Xenia</u>, 467 F. Supp 3d at 714 (the court rejected giving Xenia a legal right to serve under Iowa Code § 357A.13).  Xenia did not appeal the district court's summary judgment decision to the Eighth Circuit.

Relying on <u>Xenia</u>, Hermosa argues that preemption is limited by an association's legal rights as defined by state law at the time of the qualifying loan.  <u>Xenia</u>, 467 F.Supp 3d at 707.  Hermosa states what it considers a

critical fact—that the 1989 enactment of SDCL § 9-47-22 was well before SBHWS's formation in 2005 and SBHWS's indebtedness in 2010.  Docket No. 27, p. 17.  Hermosa is correct in part that Congressional silence regarding how service is to be made available shows an intention for states to define that term under § 1926(b).  But such an omission does not negate preemption.  Section 1926(b) preemption requires that South Dakota must provide SBHWS the legal right to serve the disputed territory.  See Lebanon, 605 F.3d at 511, 516, 519.  South Dakota has done so.  Compare SDCL §§ 46A-1-13-11, 9-47-22 with Iowa Code Ann. § 357A.2.  This undermines Hermosa's reliance on Xenia as to the present facts in this case.

The flaw in the Xenia court's analysis, in this court's opinion, is that it views the 2-mile buffer around municipalities as static.  Whatever the geographic boundaries of a municipality were at the time the water association incurred its indebtedness, those remain constant.  If this were true, there would be greater plausibility to the Xenia court's analysis.  But the facts of this case demonstrate the falsity of that assumption.

Under Hermosa's interpretation of the interplay between SDCL § 9-47-22 and § 1926(b), municipalities could eat away at a rural water association's territory by serially annexing portions of that territory into the municipalities and expanding ever more the 3-mile radius, while ever diminishing the federal government's security interest.  This the supremacy clause does not allow.  If the intent of Congress was to protect the federal government's security interest in loans issued to rural water associations, and if § SDCL 9-47-22 frustrates

31

that purpose by limiting the service area of the association, then the state law is preempted.

The court notes that § 1926(b) does not preempt SDCL § 9-47-22 in all circumstances.  As with B-Y and Sioux before, the 3-mile notice provision and a municipalities' first right of refusal continues to apply to rural water systems that are not eligible for § 1926(b) protection under the Eighth Circuit test.  If (1) SBHWS ceases to be indebted to the USDA, or (2) loses either their legal right to serve under South Dakota state law, or cannot physically serve Lone Coyote, § 1926(b) will no longer apply.

Neither does § 1926(b) stifle Hermosa's ability to annex adjacent land. As SBHWS correctly asserts, Hermosa can annex Lone Coyote, and SBHWS can still provide water.  See Docket No. 46, p. 12.  Existing South Dakota municipalities and rural water service providers have done just exactly this in the past—when the city of Rapid City annexed property within the territory of Rapid Valley Water District, the Rapid Valley Water District provided the water to those users.  Id.  Therefore, if the court's analysis of state law is in error or is countermanded by the South Dakota Supreme Court at some point, the court alternatively holds that SDCL § 9-47-22 is preempted by 7 U.S.C. § 1926(b).

### 3.    42 U.S.C. § 1983

Section 1983 affords a remedy for damages when a person acting under color of state law deprives another person of any right guaranteed by the federal constitution or a federal statute.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).  "Every person who, under color of any statute . . . of any

State [causes a] deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). "The § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." Maine v. Thiboutot, 448 U.S. 1, 1 (1980). In § 1983 actions, courts must first identify the specific constitutional or statutory right allegedly infringed. Id. (citing Graham v. Connor, 490 U.S. 386, 394 (1989)). Section 1983 is the appropriate vehicle to recover damages for a violation of § 1926(b). See City of Sioux Center, 967 F. Supp. at 1504.

Here, SBHWS has proved by undisputed facts that Hermosa violated § 1926(b). Hermosa acted under the color of state law (SDCL § 9-47-22) depriving SBHWS of its federal constitutional right when it annexed Lone Coyote for the purposes of providing water and sewer. SBHWS has demonstrated liability under § 1983.

### 4. Relief

In count 1, SBHWS seeks to recover all damages allowable under 42 U.S.C. § 1983, resulting from Hermosa's violation of § 1926(b). Docket No. 13, pp. 8-10. SBHWS seeks declaratory relief for Hermosa's violation of § 1926(b) in count 2 pursuant to 28 U.S.C. §§ 2201 & 2202. Id. at p. 11. Additionally, SBHWS requests an order permanently enjoining Hermosa from providing

water services to Lone Coyote or taking the Water System's existing customers in count 3.  Id. at pp. 12-14.  SBHWS also seeks to recover reasonable and necessary attorney's fees under 42 U.S.C. § 1988 for counts 1-3.  Id. at pp. 10-11, 14.

The ripeness doctrine applies to parties seeking declaratory judgment. Pub. Water Supply Dist. No. 8 of Clay Cnty., Mo. v. City of Kearney, Mo., 401 F.3d 930, 932 (8th Cir. 2005) (citing Public Water Supply Dist. No. 10 v. City of Peculiar, 345 F.3d 570, 572 (8th Cir. 2003)).  SBHWS must face an injury that is "certainly impending." Id. (citing South Dakota Mining Ass'n, Inc. v. Lawrence Cty., 155 F.3d 1005, 1008 (8th Cir. 1998).  The factual basis for declaratory relief cannot be "too hypothetical." Id. (citing Nebraska Public Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1039–40 (8th Cir. 2000)).  Because this court finds in favor of SBHWS's motion for summary judgment on count 2, SBHWS is entitled to declaratory judgment.

"[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156–57 (2010).  "A claim for injunctive relief from violations of § 1926(b) would seem to fall within the ambit of a § 1983 claim." City of Sioux

34

Ctr., 967 F. Supp. 1483, at 1506.  The court will await the presentation of evidence at trial to determine whether SBHWS is entitled to an injunction on count 3.

Additionally, a prevailing party may be entitled to general and specific damages and reasonable attorney's fees.  42 U.S.C. §§ 1983 & 1988(b).  The extent of damages for a § 1983 violation is an appropriate determination for a jury.  See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 310 (1986).

**C.    Counts 4 & 5**

This court has supplemental jurisdiction over SBHWS's related state court claims under 28 U.S.C. § 1367(a).  In count 4, SBHWS seeks declaratory judgment that Hermosa's annexation violates SDCL § 9-4-1 because it is not contiguous.  Docket No. 13; see Docket No 37-3 (Ex. 116).  The statute states:

> The governing body of a municipality, upon receipt of a written petition describing the boundaries of any territory contiguous to that municipality sought to be annexed to that municipality, may by resolution include such territory or any part thereof within such municipality if the petition is signed by not less than three-fourths of the registered voters and by the owners of not less than three-fourths of the value of the territory sought to be annexed to the municipality.

SDCL § 9-4-1.

In count 5, SBHWS seeks declaratory judgment that Hermosa violated SDCL § 9-21-10 when Hermosa awarded a contract bid for the waterline within SBHWS's exclusive easement.  Docket No. 13, pp. 15-18.  Section 9-21-10 states:

> Except as otherwise provided no contract shall be made by the governing body of any municipality and no expense shall be incurred by any department or any officer thereof, whether ordered by the

governing body or not, unless an appropriation shall have been previously made concerning such expense, or the governing body authorized to issue bonds for a specific purpose.

SDCL § 9-21-10.  SBHWS did not move for summary judgment on count 5 in its motion for partial summary judgment.  Hermosa moves for summary judgment on counts 4 & 5 arguing that SBHWS lacks standing.

"Federal courts are courts of limited jurisdiction."  Kokkonen v. Guardian Life Insurance Co. of Am., 511 U.S. 375, 377 (1994).  Federal subject matter jurisdiction requires that a party have standing to sue.  See ABF Frieght Sys., Inc. v. Int'l Bhd. Of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011).  When parties assert the presence of supplemental jurisdiction for state claims, federal courts must apply the substantive state rules for standing regarding those state claims.  See Myers v. Richland Cty., 429 F.3d 740, 749 (8th Cir. 2005); Metropolitan Express Servs., Inc. v. City of Kansas City, 23 F.3d 1367, 1369 (8th Cir. 1994) (applying state law of standing in federal diversity case); Westborough Mall, Inc. v. City of Cape Girardeau, 693 F.2d 733, 747–48 (8th Cir. 1982).

South Dakota law provides two potential ways that SBHWS could establish standing—one general, the other specific to claims brought against muncipalities.  "[To] establish standing, a litigant must show: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the plaintiff's injury and the conduct of which the plaintiff complains; and (3) the likelihood that the injury will be redressed by a

favorable decision." City of Rapid City v. Estes, 805 N.W.2d 714, 717 (S.D. 2011); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

In South Dakota, "[s]tanding is established through being a real party in interest and it is statutorily controlled." Wang v. Wang, 393 N.W.2d 771, 775 (S.D. 1986) (internal quotations omitted).  Courts look to terms defined in the relevant chapter to determine a party's qualifications for standing.  See Sierra Club v. Clay Cnty. Bd. of Adjustment, 959 N.W.2d 615, 621 (S.D. 2021).

There is also a specific variety of standing.  To bring a claim against a municipality under Title 9 of the South Dakota Codified Laws, the plaintiff must have standing as prescribed by SDCL § 9-1-6.  Section 9-1-6 requires that the plaintiff be a "citizen" and a "taxpayer residing within a municipality." SDCL § 9-1-6; Ericksen v. City of Sioux Falls, 14 N.W.2d 89, 93–94 (1944) ("By reason of this statute, a resident citizen and taxpayer is authorized to test in court any ordinance, resolution or contract executed by the municipal authorities in any case where the validity of such action is challenged."). "Citizen" and "taxpayer residing within a municipality" are not defined in Title 9.  South Dakota case law has interpreted SDCL § 9-1-6 to require that both conditions be met, and merely paying sales tax to the municipality does not confer standing.  Winter Bros. Underground Inc. v. City of Beresford, 652 N.W.2d 99, 105 (citing Stumes v. Bloomberg, 551 N.W.2d 590, 593) (the plaintiff resided in the city, but did not own any real property).  A resident citizen taxpayer need not show damages.  Haines v. Rapid City, 238 N.W. 145, 149 (1931).

37

Because SBHWS has not established that it is (1) a citizen of Hermosa and (2) a taxpayer residing in Hermosa, specific standing under SDCL ch. 9-1 fails on counts 4 & 5.

SBHWS argues an alternative path to standing under Lujan.  SBHWS asserts that the § 1926(b) violation—the improper annexation—is injury enough to invoke standing.  Docket No. 46, p. 16; Docket No. 50, p. 12.  The Lujan test relied upon by SBHWS is similar to the general standing test articulated by the South Dakota Supreme Court in Estes as cited above. SBHWS asserts its actual injury is the loss of Lone Coyote as a customer. Docket No. 46, p. 17.  However, elsewhere in its brief, SBHWS asserts that Hermosa can annex Lone Coyote and SBHWS can still provide water.  Id. at p. 12.  SBHWS provides an example of a municipality doing exactly that.  Rapid City annexed Rapid Valley, yet Rapid Valley Water District provides the annexed land with water.  Id.  If SBHWS asserts that it can provide water to Lone Coyote despite Hermosa's annexation of Lone Coyote, there would be no loss of customers, and no injury in fact.  SBHWS's injury comes from Hermosa providing water to Lone Coyote, not from Hermosa's annexation of Lone Coyote. Because SBHWS fails standing under both general and specific standing established by South Dakota law, this court grants summary judgment in favor of Hermosa on counts 4 and 5.

**E.    Count 6**

SBHWS claims that Hermosa has impaired its exclusive easement rights by installing a waterline and sewer line in the Heartland easement which lines

cross over SBHWS's easement.  Docket No. 13, p. 16.  SBHWS requests this court to order Hermosa to pay just compensation for "invading SBHWS's exclusive right to place water lines on Heartland Storage Property."  Docket No. 50, p. 13.  SBHWS agrees that Hermosa may install water lines, but such installation in this case constitutes a taking of property for which SBHWS must be compensated.  Docket No. 50, p. 13.  SBHWS rightly points out that Hermosa does not dispute there was a taking and does not address compensation for the taking.  Docket No. 50, p. 12-14; see Docket No. 26, pp. 22-25; Docket No. 43, pp. 23-26.  Hermosa instead argues that SBHWS's easement is (1) non-exclusive, and (2) unenforceable because it is against public policy.  Docket No. 27, pp. 22-25.

"The abrogation of a governmental entity's sovereign immunity in cases involving a taking or damaging of private property is so fundamental that it is not found in statute, but rather in our Bill of Rights in the Constitution." Rupert v. City of Rapid City, 827 N.W.2d 55, 71 (S.D. 2013); Benson v. State, 710 N.W.2d 131, 145 (S.D. 2006).  Article VI, § 13 of the South Dakota Constitution states:

> Private property shall not be taken for public use, or damaged, without just compensation, which will be determined according to legal procedure established by the Legislature and according to § 6 of this article. No benefit which may accrue to the owner as the result of an improvement made by any private corporation shall be considered in fixing the compensation for property taken or damaged. The fee of land taken for railroad tracks or other highways shall remain in such owners, subject to the use for which it is taken.

S.D. CONST. art. VI, § 13.

"The [Takings] Clause expressly requires compensation where government takes private property for public use.  It does not bar government from interfering with property rights, but rather requires compensation in the event of otherwise proper interference amounting to a taking." Ehlebracht v. Deuel Cnty. Plan. Comm'n, 972 N.W.2d 464, 477 (S.D. 2022) (quoting Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 541, 125 S. Ct. 2074, 2083 (2005)).  "It seems very difficult in reason to show why the State should not pay for property which it destroys or impairs the value, as well as for what it physically takes." Rupert, 827 N.W.2d at 61 (quoting Bakke v. State, 744 P.2d 655, 657 (Alaska 1987)).

"[T]he first step in any Article VI analysis must be to determine whether a recognized property right has been infringed by state conduct." Schliem v. State ex rel. Dept. of Transp., 888 N.W.2d 217, 224 (S.D. 2016).  "An easement is a property interest in land owned by or in the possession of another, which entitles the easement owner 'to a limited use or enjoyment of the land in which the interest exists.' " Picardi v. Zimmiond, 689 N.W.2d 886, 890 (S.D. 2004) (quoting Knight v. Madison, 634 N.W.2d 540, 542 (S.D. 2001)).  "The damage clause of the South Dakota Constitution allows a property owner to seek compensation 'for the destruction or disturbance of easements of light and air, and of accessibility, or of such other intangible rights as he enjoys in connection with and as incidental to the ownership of the land itself.' " Hall v. State ex rel. S. Dakota Dep't of Transp., 712 N.W.2d 22, 27 (S.D. 2005) (quoting 2 Nichols on Eminent Domain § 6.44).

### a.    Exclusitivity of Easement

First, Hermosa disputes the "exclusitivity" of the easement—that the scope of the easement does not restrict Hermosa from installing other utility lines.  Docket No. 44, p. 18 ¶ 53.  "The extent of an easement by grant can be ascertained either by the 'words clearly expressed, or by just and sound construction' of the easement document."  <u>Cleveland v. Tinaglia</u>, 582 N.W.2d 720, 724 (quoting <u>Salmon v. Bradshaw</u>, 173 N.W.2d 281, 284 (1969)).

The easement language states:

> The Grantor [Heartland] . . . convey unto the Grantee [SBHWS] its successors, and assigns forever, the *exclusive* perpetual right and easement on land owned by the Grantor with the right to construct, operate, maintain, repair, install parallel lines to and renew a waterline and valves. . . .

> Grantor and Grantee and their successors and assigns agree not to build, create, construct, or permit to be built, created, or constructed any obstruction, building, or other structure upon, over, or under the Grantor's property herein described within this easement and within a five (5) foot wide strip adjacent to the northern edge of this easement.

Docket No. 35-9, pp. 1-2 (Ex. 87) (emphasis added).  The language in the "Additional Terms and Conditions of Easement" expressly excludes installation of all other utility lines on the property.  Docket No. 35-9, p. 2.  The court concludes SBHWS's water line easement is exclusive.  The question remains whether enforcement of that exclusive easement upon Hermosa violates South Dakota public policy.

### b.    Public Policy

Hermosa contends that if this court interprets SBHWS to have an exclusive easement, it is unforceable against Hermosa due to public policy.

Less than a year after giving SBHWS an exclusive easement, Heartland gave Hermosa a "public utility easement" to construct water and sewer lines on the same property.  Docket No. 36-2 (Ex. 89).  Hermosa concedes that its waterlines cross over and under SBWHS's easement and watermain.  Docket No. 44, p. 20 ¶ 58; Docket No. 36-2, p. 6.  SBHWS asserts, and Hermosa does not deny, that it knew of SBHWS's exclusive easement at the time it obtained its crossing easement from Heartland.

Hermosa relies on SDCL § 9-48-2 which authorizes a municipality to "establish, construct, and maintain main, trunk, sanitary, storm, and service sewers, and septic or sewage treatment plants, drains, and manholes either within its corporate limits or within ten miles of its corporate limits."  SDCL § 9-48-2(1).  Hermosa also relies on SDCL § 9-48-4 which gives municipalities authority to "construct, maintain, or autlorize the construction and maintenance of sewer pipes on private property."  SDCL § 9-48-4.

South Dakota caselaw interpreting these statutes is sparse, but what is available is informative.  In City of Bristol v. Horter, the taking to construct a sewerage disposal plant was for public purpose, "and the necessity was determined by the legally authorized municipal authority."  43 N.W.2d 543, 546 (S.D. 1950).  The court required additional facts as to the value of the damaged land before and after the taking to determine the appropriate compensation to the landowners.  Id. at 547 (The circuit court also omitted a finding as to whether land not taken was actually damaged).  In Parsons v. City of Sioux Falls, the defendant city was empowered by the provisions of [SDCL

42

§ 9-48-4] when it discharged sewage, but did so in a manner that permanently injured private property.   272 N.W. 288, 290 (S.D. 1937).  The court held that the property owner was entitled to compensation because their "use and enjoyment" of the property was curtailed.  Id.

Hermosa is correct that it is statutorially authorized to construct water and sewer lines in the Heartland easement under SDCL §§ 9-48-2 & 9-48-4.  SBHWS does not dispute Hermosa's right to occupy the easement, only that such a taking should be compensated.  Docket No. 50, p. 13.  Hermosa constructed water and sewer lines crossing SBHWS's exclusive easement.  Compare Docket No. 35-9, p. 6 (Ex. 87) with Docket No. 36-2, p. 6 (Ex. 89).  Such action constitutes a taking.  Hermosa's statutory authority does not absolve it of the obligation to compensate SBHWS if SBHWS can prove damages.  This court grants summary judgment in favor of SBHWS that there was a taking, however the issue of damages remains for a jury to determine at trial.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is hereby

ORDERED that the Hermosa's motion for summary judgment (Docket No. 26) is granted in part and denied in part as follows:

(1)  Hermosa's motion for summary judgment is DENIED on counts 1-3 & 6.

(2) Hermosa's motion for summary judgment is GRANTED on counts 4 & 5.

It is further

ORDERED that SBHWS's motion for partial summary judgment (Docket No. 31) is granted in part and denied in part as follows:

(1) SBHWS's motion for partial summary judgment is GRANTED on counts 1-3.  A declaration is hereby granted that SBHWS's right to serve Lone Coyote is protected by 7 U.S.C. § 1926(b).

(2) that SBHWS's motion for partial summary judgment is DENIED on count 4.

(3) SBHWS's request for damages and injunctive relief for counts 1, 3 and 6 are reserved for resolution at trial.  The issue of attorney's fees will be resolved following trial.

Dated July 27, 2023

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

44